**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cr-00190-TWP-MKK |
| | ) | |
| DERRICK ANTHONY GRIFFIN, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION TO SUPPRESS**

This matter is before the Court on a Motion to Suppress filed by Defendant Derrick Anthony Griffin ("Griffin") (Filing No. 42). Griffin seeks an order suppressing all evidence recovered pursuant to state search warrants issued in contravention of his rights under the United States Constitution. *Id.* Griffin was indicted by a federal grand jury and is charged with Count 1: Possession with Intent to Distribute Controlled Substance, Count 2: Possession with Intent to Distribute Controlled Substance, and Count 3: Use or Carry of a Firearm During and in Relation to a Drug Trafficking Crime (Filing No. 16). The Court determined that a *Franks* hearing was necessary (Filing No. 55), and that hearing was held on May 20, 2025. Pursuant to Federal Rule of Criminal Procedure 12(d), the Court states its findings of fact and conclusions of law and determines that the Motion to Suppress should be **denied**.

## I.      FINDINGS OF FACT

On May 1, 2024, Indianapolis Metropolitan Police Department ("IMPD") officers responded to a report of gun shots fired at Club Paradise, a night club located on the southeast side of Indianapolis (Filing No. 43-1 at 3). During their investigation, Detectives spoke with Club Paradise's security guard, Christian Montgomery ("Montgomery"). *Id.* at 3-4. Montgomery, who

was hit in the crossfire, told officers that an argument started between three or four men inside the club (Filing No. 43-4 at 3). The argument then escalated and continued as the men went outside. *Id.* Eventually, the argument resulted in gun shots being fired from two cars in the club parking lot. *Id.* Video footage recovered from the scene shows an argument escalate outside of Club Paradise resulting in a few men going to a black Tesla and a Chevy truck. Then, two flashes of light come from the Chevy before it pulls off with the black Tesla following behind. Other surveillance video shows multiple flashes of light come from the black Tesla before both vehicles pull away.

Detectives, using Automated License Plate Reader ("ALPR") data, observed a Chevy Silverado captured by an ALPR camera on the public roadway at Arlington and English Avenue at approximately 2:54 a.m. *Id.* at 6. A black Tesla with tinted windows, chrome around the windows and distinct rims was captured on the same camera near the exact same time. The Tesla was registered to Griffin, who matched the description of one of the males involved in the argument at Club Paradise. *Id.*

On May 10, 2024, IMPD Detective Sara Didandeh ("Detective Didandeh") applied for and was granted a warrant to search the Tesla registered to Griffin for firearms, ammunition and evidence related to it, documentation showing ownership of the car, DNA and prints, photographs, a flash drive, and electronics (Filing No. 43-2 at 7), (Hrg. Exhibit 8). Then, on May 17, 2024, detectives obtained a search warrant for a buccal cell sample, photo, and prints from Griffin (Filing No. 43-6 at 11), (Hrg. Exhibit 9). Officers visited Griffin's reported home address several times but were unable to locate Griffin or the Tesla to execute the search warrants. During the investigation, Detective Didandeh learned that the Tesla—registered in Griffin's name, date of birth and address—had registered multiple new license plates (Filing No. 43-4 at 7).

On September 30, 2024, Detective Robert Chappell ("Detective Chappell") observed that the Tesla produced a hit from an ALPR camera on the southeast side of Indianapolis. *Id*. Detective Chappell then located the black Tesla with tinted windows, chrome around the windows and distinct rims at 3401 N. Emerson parked in the lot of The Wash Hand Carwash and Detailing (the "Car Wash"). *Id*. Detective Chappell verified that the Tesla was the same car which produced the hit from the ALPR data on the night of the incident at Club Paradise and observed Griffin exit the Car Wash before going back inside. *Id*. Detective Didandeh then applied for and received a new search warrant to "refresh" the warrant that had never been served, to search the person of Derrick Griffin and to seize a buccal cell sample, photograph and prints (Hrg. Exhibit 10).

Body camera footage was obtained from the officers who approached the Car Wash. Detective Chappell's body camera footage shows him conducting surveillance at the Car Wash (Filing No. 53). When Detective Chappell approached the Car Wash, he saw Griffin and two other men standing in the bay of the building with the garage door open. *Id*. at 1:22-1:30. Detective Chappell and other officers ordered Griffin and the two other men out of the Car Wash. *Id*. at 1:25-2:00. Officer Dane Elkins ("Detective Elkins") handcuffed Griffin in the parking lot. *Id*. at 2:00-2:10. Officers made a protective sweep of the car wash interior, before searching the Tesla.  To make sure no one else was inside the Car Wash, one officer yelled "police department . . . anyone inside make yourself known!" and "police department!" multiple times during the sweep (Filing No. 53 1C at 2:55-3:35). As officers entered, they audibly commented on the strong odor of marijuana within the Car Wash. *Id*. at 2:55-3:05. Officers completed the sweep without finding anyone inside. *Id*. at 2:55-6:10. Before exiting the Car Wash, the officers obtained the vehicle identification number ("VIN") and license plate number of a second car sitting in the garage. *Id*. at 5:40-6:20.

As authorized by the search warrants, officers searched the front storage area of the Tesla (similar to the trunk of a traditional car) and found a large amount of suspected cocaine packaged in bricks (Filing No. 1 at 4 ¶ 11). Officers exited the car and obtained search warrants for the Tesla and the car wash to search for drugs and drug-related evidence. Detective Didandeh then submitted an Affidavit for a search warrant—from a judicial officer in the Marion Superior Court—to search the Tesla (Hrg. Exhibit 11) for evidence of controlled substances. The affidavit was the same as the prior affidavits for search warrants, but included the additional language:

> Detective Didandeh knows that Tesla's are equipped with cameras and GPS. On 5/10/2024, Det. Didandeh applied for and was granted a search warrant for the black 2016 Tesla Model X IN plate #332EIF (VIN 5YJXCBE2XGF030047).
>
> During the course of the investigation, Detective Didandeh learned that the Tesla had been registered with multiple new plates, with the most recent being VS9880. As of 9/30/2024, the black 2016 Tesla Model X (VIN 5YJXCBE2XGF030047) is bearing plate VS9880.
>
> On 9/30/2024, VCU Det. Chappell observed the Tesla hit on the LPR reader at EB 70 Exit to SB Emerson at 4:48pm. Detective Chappell then located the black Tesla at 3401 N. Emerson parked back in the lot. Detective Chappell verified the images on the LPR reader and the Tesla parked in the lot and they were the same. Detective Chappell then observed Derrick Griffin exit the building and go back in.
>
> Detectives were able to get Mr. Griffin into custody. Mr. Griffin told detectives that he is the owner of the shop.
>
> Det. Didandeh applied for and was granted a new search warrant for the Tesla reference cause # 49D29-2409-MC-028214. During the execution of the warrant on the Tesla, Sgt. Schwomeyer located a large amount of suspected narcotics packaged and large amount of US currency. Detective Didandeh is requesting a search warrant for the Tesla for narcotics, currency, and any other evidence of dealing narcotics.

(Hrg. Exhibit 11).

In further search of the Tesla, officers located a handgun underneath the driver's seat. In total, law enforcement located the following items in the Tesla: "approximately 19,700 grams of suspected cocaine, a tan in color Springfield Armory 9mm handgun with serial number BA473929,

and a large amount of U.S. currency." (Filing No. 1 at 4 at ¶ 12). During the search of the Car Wash, law enforcement located the following items: "approximately 2,338 grams of suspected cocaine, approximately 231.6 grams of suspected heroin, 127.6 grams of suspected fentanyl, 4 digital scales, approximately 8,000 grams of marijuana, and a large amount of U.S. currency." *Id*. at 5 ¶ 14, (Hrg. Exhibit 11). The suspected cocaine, heroin, and fentanyl all field tested positive for the above-described substances. *Id*. The currency recovered from the Tesla and the Car Wash was counted and added up to $259,556.00 (Filing No. 29 at 2).

On October 22, 2024, Griffin was indicted by a federal grand jury and is charged with Count 1: Possession with Intent to Distribute Controlled Substance, Count 2: Possession with Intent to Distribute Controlled Substance, and Count 3: Use or Carry of a Firearm During and in Relation to a Drug Trafficking Crime (Filing No. 16). Griffin now moves to suppress all evidence obtained from his Tesla and the Car Wash.

## II.    CONCLUSIONS OF LAW AND DISCUSSION

Griffin argues the application for the September 2024 Search Warrant for the Tesla omitted critical information, and these omissions were done for a specific purpose to mislead or hide information. He further asserts the evidence obtained must be suppressed for three reasons: (1) the information used for the second search warrant to search the Tesla was stale, (2) the protective sweep was warrantless and there was no reasonable belief that it was needed, and (3) the obtaining of Griffin's license plate via ALPR data was a warrantless search (*See* Filing No. 43). The Court will first address the *Franks* issue before addressing the remaining arguments.

### A.    Franks Hearing on Material Falsehoods or Omissions

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court "sets out the standards for challenging the validity of search warrants obtained with the help of factual misrepresentations"

5

in affidavits. *United States v. Swanson*, 210 F.3d 788, 789 (7th Cir. 2000). A Franks hearing is "'an evidentiary hearing regarding the veracity of information' provided to a judge to determine the existence of probable cause," and to determine whether the information provided to the judge would have still supported probable cause, setting aside any intentional or reckless misrepresentations or omissions. *United States v. Karmo*, 109 F.4th 991, 996 (7th Cir. 2024) (quoting *United States v. Mullins*, 803 F.3d 858, 861 (7th Cir. 2015)).

The Court granted Griffin's request for a *Franks* hearing; thus, he has the burden of demonstrating by a preponderance of the evidence that the search warrant must be voided and the fruits of the search suppressed. To do so, he must show that (1) the search warrant affidavit contained a false material statement or omitted a material fact; (2) the affiant omitted the material fact or made the false statement intentionally, or with reckless disregard for the truth; and (3) the false statement is material to the finding of probable cause. *United States v Lowe*, 516 F.3d 580, 584 (7th Cir. 2008).

At the onset of his Franks hearing, Griffin established standing and admitted that he is the owner of the black Tesla. Griffin argued that the affidavit for the September 30, 2024, search warrant for the Tesla (Hrg. Exhibit 11) contains an omission, and thus lacked probable cause to justify the issuance of the Second Search Warrant. Specifically, "[i]n addition to leaving out information pertaining to the initial warrantless search of the carwash, the application for the Second Search Warrant for Tesla also fails to inform the second judicial officer that the affidavit was previously submitted to another judge." (Filing No. 54 at 5). Griffin asserts "[i]t is concerning that detectives would completely omit from a search warrant affidavit the fact they had already entered the business, purportedly to conduct a protective sweep." *Id*. at 8.

At the close of evidence, the Court granted the Government's motion for a directed finding because the evidence presented shows there were no material omissions. Detective Didandeh testified that requests for search warrants in Marion County are submitted by email to an electronic system, the affidavit and application goes to the clerk and then into a queue for review by a Magistrate Judge. Detective Didandeh considered the September 2024 warrant requests as subsequent search warrants and thus checked the "no" box concerning whether the affidavit had been submitted to a previous judge. The September 2024 affidavit provided sufficient evidence for a reasonable person to conclude that a search of the Tesla would produce evidence of a crime, thus the search warrant itself was supported by probable cause. Contrary to Griffin's assertions, the affidavit to search the Tesla for drugs acknowledged the May 2024 search warrants and as explained in this Order, the officer's initial sweep of the Car Wash did not constitute a warrantless search. The evidence presented does not demonstrate that Detective Didandeh made a false statement or material omission, which would have had an implication on the magistrate judge's finding of probable cause to search the vehicle. The Court will now address the remaining arguments for suppression.

**B.**    <u>**Staleness**</u>

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. "The Fourth Amendment requires that, absent certain exceptions . . . police must obtain a warrant from a neutral and disinterested magistrate before commencing a search." *United States v. Robinson*, 546 F.3d 884, 887 (7th Cir. 2008). "No warrant shall issue unless there is probable cause, as typically set forth in a warrant affidavit, to justify the search. Probable cause is established when, considering the totality of the circumstances, there is sufficient evidence to cause a

reasonably prudent person to believe that a search will uncover evidence of a crime." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "Determining whether probable cause exists requires a common-sense analysis of the facts available to the judicial officer who issued the warrant." *United States v. Carroll*, 750 F.3d 700, 703 (7th Cir. 2014).

"Staleness is highly relevant to the legality of a search for a perishable or consumable object" such as cocaine or marijuana. *United States v. Seiver*, 692 F.3d 774, 777 (7th Cir. 2012). However, "depending on the circumstances, evidence of the sighting of a gun (or related items) does not automatically grow stale as time passes." *United States v. Hicks*, 650 F.3d 1058, 1068 (7th Cir. 2011) (collecting cases). "And more recent information supporting probable cause can freshen information that might otherwise be stale." *United States v. Bradford*, 905 F.3d 497, 504 (7th Cir. 2018) (citing *United States v. Prideaux-Wentz*, 543 F.3d 954, 958 (7th Cir. 2008); *United States v. Newsom*, 402 F.3d 780, 783 (7th Cir. 2005)). "Accordingly, if a complaint indicates 'ongoing, continuous criminal activity, the passage of time becomes less critical.'" *Edmond v. United States*, 899 F.3d 446, 454 (7th Cir. 2018) (quoting *United States v. Shomo*, 786 F.2d 981, 984 (10th Cir. 1986)).

Lastly, "[w]hen a search is authorized by a warrant, deference is owed to the issuing judge's conclusion that there is probable cause." *United States v. Sutton*, 742 F.3d 770, 773 (7th Cir. 2014). "Courts should defer to the issuing judge's initial probable cause finding if there is substantial evidence in the record that supports his decision." *Id.* (quotation marks omitted).

The warrant to search Griffin's Tesla authorized a search and seizure of the following items:

1. Firearms, firearm accessories, firearms parts, paperwork relating to the purchase or sale of firearms,
2. Spent cartridge casings, spent bullets, bullet fragments, live bullets,
3. Documents showing ownership/and or other occupants of the vehicle,
4. DNA, trace evidence, latent prints,
5. Photographs/video of the interior and exterior of the vehicle,

8

6.  Flash drive,
7.  All electronics related to the camera system/DVR and GPS.

(Filing No. 43-4 at 8). Griffin contends that all information used in the application for the second warrant to search his vehicle was based exclusively on a single episode of alleged criminal conduct taking place 152 days prior (Filing No. 43 at 5). He further argues that the new warrant did not "articulate any grounds for belief that any of the items sought from the Tesla were likely present nearly five (5) months later." *Id*.

Griffin argues that "[w]ithout any research whatsoever, it is common knowledge that video data stored on digital video recorders ("DVRs") is extremely time-sensitive, as DVRs commonly overwrite old data as storage space is consumed with new data." (Filing No. 43 at 7). However, Griffin cites to no authority other than this purported "common knowledge" that data stored on DVRs is extremely time sensitive.

A court may take judicial notice of a fact that is "not subject to reasonable dispute" if the fact is "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice "is an adjudicative device that substitutes the acceptance of a universal truth for the conventional method of introducing evidence." *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997). Here, the Court declines to take judicial notice that data stored on DVRs is extremely time sensitive or that DVRs commonly overwrite old data as Griffin does not provide authority or citation which can accurately or readily establish this fact, and the Court is unaware of any common knowledge within the Court's jurisdiction which would establish this fact.

Griffin also argues that "a simple check of Tesla's website reveals that Tesla owners must first activate their dashcam and then manually save any recordings desired to be preserved." (Filing

9

No. 43 at 7). However, Griffin contradicts this assertion by admitting that "[o]nly select videos are saved automatically (i.e. collisions or airbag deployment)." *Id*. Griffin argues that DNA and genetic material are unlikely to remain four months later, especially when the vehicle is cleaned multiple times over that period. *Id*.

Griffin also cites a series of Child Sexual Abuse Material ("CSAM") cases where multiple circuits have held that the passage of time did not render the information used to obtain a warrant stale. *Id*. at 5-6 (citing *Carroll*, 750 F.3d at 704 (upholding probable cause for a CSAM search warrant based on information that was nearly five years old); *United States v. Lacy*, 119 F.3d 742, 745 (9th Cir. 1997) (upholding search warrant based on information that was ten months old because distributors of CSAM rarely if ever dispose of such material); *United States v. Harvey*, 2 F.3d 1318, 1322-23 (3d Cir. 1993) (concluding that a warrant was not based on stale information, in part because those who collect child pornography tend to keep it)). Griffin argues that these cases upheld the warrants because officers directly expressed why the CSAM was still in the offender's possession. He compares these CSAM cases to the case before the Court arguing that the affidavits submitted in support of the second search warrant for his Tesla did not explicitly state why the data was present five months later, and thus they cannot be upheld. *Id*.

Griffin then contends that the Seventh Circuit views the passage of time differently for warrants concerning weapons violations compared to CSAM cases citing *United States v. Martin*, 399 F.3d 879, 881 (7th Cir. 2005) where the court noted that the "[p]assage of time could affect reasonableness" for Fourth Amendment purposes, "especially for search warrants that authorize the police to hunt for items that are portable . . ." *Id*. Griffin also cites *Hicks* where the Seventh Circuit found that officers had sufficient probable cause to seek a warrant for a semiautomatic firearm even though the information used to support the warrant was approximately two months

10

old. 650 F.3d at 1063. Griffin contends that the Seventh Circuit in *Hicks* based its decision on the fact that Hicks was seen by multiple sources sharing the gun on an ongoing basis. *Id*. at 1066.

In opposition, the Government asserts that Griffin attempts to explain away each factor in isolation, but under the totality of the circumstances, the information was not stale (Filing No. 51 at 6). Specifically, "[m]any of the items detectives sought from the car for simply are not perishable. This includes electronics related to the camera system/DVR and GPS." *Id*. The Government proffered that deleted computer files are normally recoverable by computer experts and how soon a file is overwritten depends on a variety of factors, such as computer savvy, how often files are saved to a hard drive, and how the file system allocates new files (Filing No. 51 at 6-7 (citing *Seiver*, 692 F.3d at 776)).

The Government also proffered that the search warrant sought documentation of ownership of the vehicle and that there was probable cause to search the Tesla for firearms because the car was allegedly involved in a shooting, and was associated with Griffin, who matched the description of an individual who was with the shooters at Club Paradise. In addition, the license plate had been switched multiple times leading officers to conclude that Griffin was attempting to evade law enforcement. *Id*. at 7-8. The Court is persuaded.

While Griffin attempts to isolate certain items of the search warrant, the Court must look at the totality of the circumstances in determining whether there is sufficient evidence for a reasonably prudent person to conclude that the search will uncover evidence of a crime. *Robinson*, 546 F.3d at 887. The Court also defers to the granting judge's determination that probable cause existed if there is substantial evidence in the record that supports their decision. *Sutton,* 742 F.3d at 773. Here, the totality of the circumstances provides sufficient evidence to conclude that the

search would uncover a crime. Further, there is substantial evidence supporting the granting judge's decision that probable cause existed.

The evidence submitted shows that Griffin's Tesla was involved in a club shooting where multiple shots were fired. The Tesla was associated with Griffin, who matched the description of an individual at the shooting, at the time of the search. Griffin admits that he is the owner of the Tesla, and the evidence show the license plate of his Tesla was changed multiple times over the course of the investigation. Detective Didendah testified that switching the license plate multiple times is often done in an attempt to evade law enforcement and conceal evidence of a crime. Further, when officers approached Griffin at the Car Wash, they smelled a strong odor of marijuana. Such ongoing criminal activity makes the passage of time less critical. *Edmond*, 899 F.3d at 454.

It was reasonable for detectives to search the car for ammunition, firearms, and shell casings. Video evidence showed shots being fired from the Tesla and thus, it is reasonable to conclude that shell casings might still be found in the car. It is also reasonable for detectives to search for data related to the camera system/DVR and GPS, since Tesla are known to contain such devices. As discussed above, Griffin asserts, without providing any authority to support his assertion, that DVRs overwrite themselves so quickly that it is unreasonable to expect evidence to remain four months later. Griffin incorrectly equates the ability of the car to be cleaned and the DVR to overwrite itself with the conclusion that it is unreasonable to expect evidence to remain. The Court disagrees and finds that it was reasonable for the Magistrate Judge to conclude that the camera system and GPS on the Tesla would uncover evidence of a crime.

Lastly, the facts in the cases cited by Griffin are distinguished from the facts in this case. *United States v. Martin* involved an expired arrest warrant and a consent to search pursuant to the

12

expired arrest warrant, 399 F.3d 879, 880 (7th Cir. 2005), and *Hicks* involved a consent to search based on a threat to get a search warrant. 650 F.3d at 1060. Moreover, while the Court understands Griffin's argument that many courts in CSAM cases have upheld warrants based on very old information in part due to the officers' statements that CSAM is often kept for long periods of time, the mere fact that the officer in this case did not explicitly state why each piece of evidence would be found in the Tesla does not invalidate the warrant. That is not the standard. Rather, the Court looks at the totality of the circumstances to determine whether there was sufficient evidence for a reasonably prudent person to conclude that a search would uncover evidence of a crime. The Magistrate Judge determined that there was, and this Court agrees. The Tesla was involved in a night club shooting, was still associated with Griffin, who matched the description of an assailant at the club, and the Car Wash smelled strongly of marijuana. Therefore, it was reasonable for the Magistrate Judge to issue the search warrants.

**C.**     <u>**The Protective Sweep**</u>

A protective sweep is a "quick and limited search of a premises" conducted to ensure the safety of police officers and others in the area. *United States v. Richards*, 937 F.2d 1287, 1291 (7th Cir. 1991) (citing *Maryland v. Buie*, 494 U.S. 325 (1990)). "The Fourth Amendment permits a protective sweep 'if the searching officer possessed a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer in believing that the area swept harbored an individual posing a danger to the officer or others.'" *United States v. Henderson*, 748 F.3d 788, 791 (7th Cir. 2014) (quoting *Buie*, 494 U.S. at 327) (internal citations omitted). "A protective sweep is 'aimed at protecting the arresting officers' and is 'not a full search of the premises.'" *Id*. (quoting *Buie*, 494 U.S. at 335). "The search is limited to a cursory inspection into spaces where other assailants may be hiding and

must not last 'longer than is necessary to dispel the reasonable suspicion of danger.'" *Id.* (quoting *Buie*, 494 U.S. at 341).

Griffin contends that the protective sweep was unreasonable because it exceeded what is permitted under the exception to the search warrant requirement of the Fourth Amendment (Filing No. 54 at 8). He argues that the unreasonableness of the protective sweep was an unlawful and warrantless entry on private property and therefore "all evidence gained because of any searches conducted pursuant to probable cause developed during the warrantless search must be suppressed." (Filing No. 43 at 9). This Court disagrees.

Detective Chappell had conducted surveillance at the car wash and knew that persons were inside. Griffin was being investigated for a shooting at a night club. Officers were authorized to search the Tesla for firearms, ammunition and evidence related to it. Griffin and two other men were in the bay of the car wash and upon command, exited. The Government proffers that the officers decided to make a protective sweep of the car wash as the open bay was directly in front of the car they were going to search (Filing No. 51 at 5). Upon entry, officers noticed and commented on the strong odor of marijuana. The body cam videos show that the officers completed the sweep in a timely manner, not finding anyone inside, and they promptly exited the Car Wash. Officers executed the search warrant on the Tesla and found bricks of cocaine and a firearm. Given these circumstances the officers made a reasonable decision to sweep the residence for other possible suspects and the protective sweep was limited in scope.

But even if the Court agreed that the protective sweep exceeded what is permitted under the exception to the search warrant requirement of the Fourth Amendment, it would not invalidate the subsequent warrant to search the business. Griffin acknowledges that officers did not put either the protective sweep or any evidence resulting from it in the application for the search warrant. *Id.*

Thus, the Magistrate Judge's conclusion that probable cause existed, and subsequent granting of the search warrant, was irrespective of the protective sweep. So, none of the subsequent searches were conducted pursuant to probable cause developed during the protective sweep—probable cause already existed.

Moreover, the Court found above that there was sufficient evidence to conclude probable cause existed thus justifying the granting of the search warrant irrespective of the protective sweep or any evidence obtained during it. Officers smelled marijuana and commented on the strength of the odor coming from the business prior to the protective sweep. Thereafter, officers obtained a new search warrant for Griffin's Tesla and found bricks of cocaine, a stolen firearm, and other narcotics such as heroin and fentanyl. All this evidence was stated in the affidavit in support of the search warrant application for the search of the Car Wash and was obtained entirely exclusive of the protective sweep. Thus, whether the officers exceeded the scope of the protective sweep exception to the search warrant requirement of the Fourth Amendment is immaterial to the validity of the search warrant for the Car Wash. Griffin's Motion to Suppress evidence found in the Car Wash on this basis is therefore **denied**.

D.    **ALPR Data**

Griffin's final contention is that the use of the ALPR data which produced the hit locating his Tesla was an illegal search under the Fourth Amendment. As noted by the Government, the use of Flock cameras is not limited to law enforcement and is even available to the public with a subscription. *See* https://www.flocksafety.com/articles/6-myths-license-plate-readers-security-systems; (Filing No. 51 at 13). In *Katz v. United States*, 389 U.S. 347 (1947), the U.S. Supreme Court developed a two-prong test to determine whether a search occurred under the Fourth Amendment. "The resulting *Katz* test, containing subjective and objective components, instructs

courts to assess first whether a person has 'exhibited an actual (subjective) expectation of privacy' and second, whether that 'expectation be one that society is prepared to recognize as reasonable.'" *United States v. Tuggle*, 4 F.4th 505, 510 (7th Cir. 2021) (quoting *Katz*, 389 U.S. at 361). Further, "what a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz*, 389 U.S. at 351.

Griffin does not dispute that there is no reasonable expectation of privacy in license plates themselves due to their obvious exposure to public view, rather he argues that the Government's use of this information is questionable (Filing No. 53 at 1-2). In support of his argument, Griffin cites *Leaders of a Beautiful Struggle v. Balt. Police Dep't*, a Fourth Circuit civil case where a group of community advocates sought an injunction preventing the Baltimore Police Department from implementing a novel aerial surveillance program ("AIR Program") which would allow the police to make observations of driving patterns and behaviors and to track vehicles and individuals to and from places visited. 2 F.4th 330, 334 (4th Cir. 2021). Griffin argues that while he "does not have evidence to represent to this Court that the exact same technology is deployed in Indianapolis[,]" the "[A]LPR technology [used in this case] allows law enforcement to do far more than observing the license plate with human eyes or physically surveilling a particular vehicle of interest." (Filing No. 53 at 3).

Griffin also argues that a local news story on "Fox59 revealed that Indianapolis would have a total of 244 [ALPR cameras] by early fall of 2022" and "[g]iven the rate of growth for ALPRs, it would be reasonable to assume the number of [ALPR cameras] in Marion County [today] number more than 600." (Filing No. 43 at 11). Griffin equates this assumed number of 600 ALPR cameras to the warrantless placement of a GPS tracking device on a vehicle which was held to be unconstitutional in *United States v. Jones*, 565 U.S. 400, 413 (2012).

Finally, Griffin cites *United States v. Longmire* arguing that when a search is conducted without a warrant, the burden shifts to the Government to show by a preponderance of the evidence that an exception to the search warrant requirement applies. 761 F.2d 411, 417 (7th Cir. 1985). Specifically, Griffin argues that "[a]t the very least, the burden should shift to the Government to demonstrate the placement and use of the cameras has not reached a level of an unconstitutional search." (Filing No. 54 at 4).

Griffin's arguments are unpersuasive. First, he agrees that no reasonable expectation of privacy exists for license plates, so his contention is with the way the government used the data. Yet, Griffin does not explain how the Government illegally used the license plate data. He contends that the ALPR system is unconstitutional arguing that technology is advancing and the increase in tracking capabilities is creating constitutional dilemmas. However, he has not provided the Court with any argument as to why the Government's use of the ALPR data is unconstitutional in this case.

Second, the Court does not accept speculative factual assertions without supporting evidence. On a motion to suppress, the defendant bears the burden of making a prima facie showing of illegality. *Randle*, 966 F.2d at 1212. "Reliance on vague, conclusory allegations is insufficient." *Id*. In support of a suppression motion, "[a] defendant must present 'definite, specific, detailed, and nonconjectural' facts . . ." *Id*. (quoting *United States v. Hamm*, 786 F.2d 804, 807 (7th Cir. 1986)). Griffin argues that it is reasonable to assume there are more than 600 ALPR cameras in Marion County based on "the rate of growth for ALPRs," but does not provide what that growth rate is or how he came to such conclusion. In contrast, Detective Didandeh testified that Flock cameras "are all over the city" and she estimates "well over a hundred," but she did not know an exact number. The Court will not accept Griffin's projection without further evidence.

Third, even if there are 600 ALPR cameras in Marion County, Griffin's car was found based on one hit produced by a single ALPR camera. Griffin's movements were not tracked and this case does not rise to the level of the GPS tracker in *Jones* or the AIR Program in *Leaders of a Beautiful Struggle*. Moreover, the United States Supreme Court held in *New York v. Class*, that there was no reasonable expectation of VINs explaining that "it is unreasonable to have an expectation of privacy in an object required by law to be located in a place ordinarily in plain view from the exterior of the automobile." 475 U.S. 106, 113 (1986). Griffin's license plate is akin to the VIN in *Class*. Thus, he had no reasonable expectation of privacy in his license plate and the use of the ALPR camera to capture his license plate did not constitute a search under the Fourth Amendment.

Lastly, Griffin's burden shifting argument is misapplied. While it is true that the Government bears the burden to show that a warrantless search falls under an exception to the warrant requirement of the Fourth Amendment, *see Longmire,* 761 F.2d at 417, the Fourth Amendment does not provide any protection in this case because, as discussed above, the use of the ALPR camera was not a search. Griffin knowingly exposed his license plate to the public and therefore it is not a subject of Fourth Amendment protection. *Katz*, 389 U.S. at 351. Because the information used in the search warrant application was not stale and the use of the ALPR data was not an unconstitutional search, Griffin's Motion to Suppress evidence found in the Tesla is **denied**.

### III.    CONCLUSION

For the reasons discussed above Griffin's Motion to Suppress (Filing No. 42) is **DENIED**. This matter remains scheduled for Final Pretrial Conference on August 27, 2025 and Jury Trial on September 15, 2025.

**SO ORDERED.**

Date:    5/22/2025

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Patrick Gibson
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
patrick.gibson@usdoj.gov

Terrance Lamont Kinnard
Kinnard Rowley Powers Jimenez
tkinnard@krpjlaw.com